THE PEOPLE OF THE STATE OF NEW YORK *v.* THE FLOUR CITY LIFE ASSOCIATION.

FREDERICK W. SMITH, as Receiver of THE FLOUR CITY LIFE ASSOCIATION, Appellant; LYDIA C. POST, as Executrix, etc., of PETER E. POST, Deceased, and Others, Respondents.

*Life association — when an order for the payment of a claim amounts to an assignment pro tanto — receiver directed to pay it.*

Where a person holding a claim against a life association has received from the proper officers of the association an order on the treasurer thereof for the payment of his claim, which has been duly audited and approved by the executive committee of the association, and an order has been drawn for its payment and delivered, in accordance with the uniform practice of the association for the payment of claims of the character in question, established and allowed against its funds, and payable unconditionally out of a particular fund, such order is an assignment *pro tanto* of the fund therein named, and the receiver of the association, appointed subsequent to the delivery of such order, will be directed to pay the amount thereof out of such particular fund without waiting for the distribution of the assets of the association.

Hun.].     FIFTH DEPARTMENT, MARCH TERM, 1895.

APPEAL by Frederick W. Smith, as receiver of The Flour City Life Association, from an order of the Supreme Court, made at the Monroe Special Term and entered in the office of the clerk of the county of Monroe on the 8th day of October, 1894, directing the receiver of The Flour City Life Association to make certain payments to claimants out of the funds in his hands.

*Geo. F. Yeoman,* for the appellant.

*Geo. D. Williams,* for the respondents Post, executrix, and others.

*Irving Paine,* for the respondents O'Connor and others.

DWIGHT, P. J.:

The appellant was appointed at first temporary and afterwards permanent receiver of the defendant in an action for the dissolution of the corporation. He found among the assets of the association the sum of $2,435.13, belonging to the "Mortuary fund in Class B," on deposit in the Central National Bank of Rochester. It had been deposited by the treasurer in obedience to a by-law of the association, as follows: " Eighty (80) per cent of all net assessments for mortuary purposes shall be deposited with such bank or trust company as may be designated by the directors, to the credit of the mortuary and benefit fund of the Flour City Life Association, from which claims shall be paid."

Before the appointment of the receiver each of the petitioners, respondents here, had received from the proper officers of the association an order on the treasurer for the payment of a claim which had been duly audited and approved by the executive committee, and which — allowing for difference of name and amount — was in terms as follows:

"OFFICE OF, &c., &c.,

"ROCHESTER, N. Y., *July 25th,* 1891.

"To J. T. BALDWIN, *Treasurer :*

" Pay to the order of Lydia C. Post, as executrix, two hundred three $\frac{16}{100}$ dollars out of any sum belonging to the mortuary fund in class B, and this shall be your voucher.

" $203.16.          (Signed)

"WAYLAND TRASK, *1st. Vice-President.*

"RALPH MARDEN, *Secretary.*"

The several respondents proceeded by petition in the action in which the receiver was appointed, to obtain an order directing him to pay the several claims so allowed and certified, without waiting for administration of the receivership and a general distribution of the assets on the ground that the several orders mentioned constituted, in effect, an equitable assignment, *pro tanto*, of the fund in question, and that the portion of the fund so assigned never came to the hands of the receiver as assets of the association, but belonged to the several claimants at the time of the appointment of the receiver.

The holding at Special Term was in accordance with this contention of the petitioners, and was, as we think, entirely correct. No question whatever is made of the justness and validity of the several claims, nor that they were duly audited and allowed by the proper officers of the association, nor that the several orders for their payment which were drawn upon the treasurer and delivered to the several claimants, were so drawn and delivered in accordance with the uniform practice of the association in the payment of claims, of the character of those in question, established and allowed against its funds. Upon their face they are drawn payable unconditionally out of a particular fund, and they seem to meet all the requirements of the rule exemplified in the late cases of *Brill* v. *Tuttle* (81 N. Y. 457) and *Lauer* v. *Dunn* (52 Hun, 194; 115 N. Y. 405), to make them so many assignments, *pro tanto*, of the fund named in them.

The contention to the contrary is based upon a by-law of the association as follows:

"Every claim, providing it shall have been first approved by the executive committee, shall be paid by means of an order drawn upon the depositary of mortuary and benefit fund, signed by the president or vice-president, treasurer and secretary, and made payable to the order of the beneficiary, if living," etc. The objection is that the orders were not drawn by the officers mentioned in the by-law, nor upon the depositary of the fund. But this objection fails to discriminate between the custodian of the fund and the depositary of the fund, and assumes, contrary, as we think, to the principle involved, that the order which shall operate as an assignment of the fund must be drawn upon the latter. The treasurer is,

no doubt, in a proper and important sense, the custodian of the funds of the association. They came originally to his hands, and though for their better security he is required to deposit them, he must yet keep his account with them, charging them with moneys received by him and deposited to their credit, and crediting them with moneys drawn from them for the payment of claims to which they must respond. Such being substantially the manner in which the accounts of the association were kept, as by all analogy and precedent we must assume it to be, it was certainly very proper, if not absolutely necessary, that the first step in the payment of any claim which had been duly allowed, should be an order such as those in question in this case, drawn by the proper officers upon the treasurer of the association, payable out of the appropriate fund, and though such an order was required to be supplemented by a check, signed by the treasurer, with other officers, upon the bank where the money was deposited, for the actual payment of the claim, yet it seems to us that it was the order on the treasurer, rather than the check on the bank which, within the principle relied upon here, constituted the equitable assignment of the fund.

The affidavit of the receiver, himself, shows that it was the practice of the association to give such an order on the treasurer as the first step in the payment of claims which had been allowed, and that upon the presentation of that order to the treasurer, duly indorsed, he paid it by delivering to the payee or indorsee the check on the bank prescribed by the by-law last quoted above.

We do not find upon the proofs made that the case of the claimant Cullinan was, as suggested in the brief of counsel for the appellant, an exception to the rule which embraces all the other claims in question. In respect to all of them we think the order at Special Term was correct and should be affirmed.

LEWIS and BRADLEY, JJ., concurred.

So ordered, with ten dollars costs and disbursements of the appeal to each of the groups of respondents appearing by separate attorneys, payable by the receiver out of the fund.